United States District Court
Southern District of Texas
FILED

FEB 2 5 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARCA-TEL, S.A. DE C.V., § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. B-02-034 |
| vs. § | |
| § | |
| THOMAS K. GARNER; WESTEL, INC.; and § | |
| WESTEL INTERNATIONAL, INC., § | |
| § | |
| Defendants. § | |

## ORIGINAL COMPLAINT OF PLAINTIFF MARCA-TEL, S.A. DE C.V.

Plaintiff Marca-Tel, S. A. de C. V. ("Marca-Tel") files this Original Complaint against Defendants Thomas K. Garner ("Garner"); Westel, Inc.; and Westel International, Inc. (collectively, "Westel").

### SUMMARY OF COMPLAINT

1. Defendants Garner and Westel defrauded Marca-Tel of over $9.4 million. Marca-Tel is in the business of providing long-distance telephone service, and owns a fiber-optic network in Texas and Mexico. Westel is also in the long-distance telephone service business, with switching equipment and a customer base located in Texas. Garner controls Westel because, on information and belief, he is the President of both Westel companies, and he and his wife are the only shareholders in Westel. Marca-Tel began a business relationship with Garner and Westel in 1997, agreeing as part of that relationship that Westel would pay Marca-Tel a fee to carry certain "southbound" international long-distance traffic originating with Westel in the United States and terminating in Mexico. Westel, at the time, indirectly owned 24.5% of Marca-Tel.

2. Shortly after Marca-Tel and Westel began doing business in 1997, Garner became the chief executive officer of Marca-Tel. Garner then abused his position of power at Marca-Tel by devising a scheme for Westel to use Marca-Tel's fiber-optic network to carry long distance traffic for Westel without payment, and without Marca-Tel's knowledge or consent. Garner and his Westel companies made a substantial profit from this scheme because they collected all the customer payments for the additional long distance traffic, but never paid Marca-Tel for using its network to carry the traffic into Mexico. Marca-Tel suffered over $9.4 million in damages due to Defendants' scheme. Having recently discovered Defendants' fraudulent scheme, Marca-Tel now sues for compensatory damages to recover the payments lost as a result of Defendants' fraud and for exemplary damages to punish Garner and Westel.

## PARTIES

3. Plaintiff Marca-Tel is a Mexican corporation with its principal place of business in Monterrey, Nuevo Léon, Mexico.

4. Defendant Thomas K. Garner is an individual who resides and has his place of business in Austin, Texas. He may be served at his place of business: 1122 Colorado St., Suite 107, Austin, Texas 78701.

5. Defendant Westel, Inc. is a Texas corporation with its principal place of business in Austin, Texas. Westel, Inc. may be served via its registered agent for service of process Thomas K. Garner, 1122 Colorado St., Suite 107, Austin, Texas 78701.

6. Defendant Westel International, Inc. is a Texas corporation with its principal place of business in Austin, Texas. Westel International, Inc. may be served via its registered agent for service of process Thomas K. Garner, 111 Congress Ave., Suite 600, Austin, Texas 78701 (or alternatively at 1122 Colorado St., Suite 107, Austin, Texas 78701).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(2) because Plaintiff Marca-Tel is a citizen of a foreign state (Mexico), all Defendants are citizens of Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over each Defendant because each Defendant is a resident and citizen of Texas, and each Defendant has substantial contact with Texas and conducts business in Texas. Defendant Thomas K. Garner resides and has his place of business in Austin, Texas. Defendants Westel, Inc. and Westel International, Inc. are both Texas corporations, and both have their principal place of business in Austin, Texas.

9. Venue is proper in this Court under 28 U.S.C. §1391(a)(1) and (c). The Westel Defendants are Texas corporations deemed to reside in this District for venue purposes because they are subject to personal jurisdiction in Texas, and would be subject to personal jurisdiction in this District if it were a separate State. Westel does business in this District and has significant contacts with this District, including but not limited to 1) offices in McAllen, Houston and Corpus Christi; and 2) on information and belief, numerous customers in this District. Venue is also proper in this Court under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to Marca-Tel's claims occurred in this District and a substantial part of the property that is the subject of this action is located in this District. For example, Marca-Tel owns fiber-optic lines in this District that carried all the Westel long-distance traffic at issue in this case.

## FACTUAL BACKGROUND

10. Marca-Tel has been in the business of providing long distance telephone service, including international service, since 1997. Marca-Tel owns a fiber-optic network located in Mexico and Texas, and entered into a contract with the Mexican national telephone company, Teléfonos de México ("Tel-Mex"), giving Marca-Tel the right to carry long-distance telephone traffic in Mexico. In exchange for that right, the contract requires Marca-Tel to pay Tel-Mex a fee for each minute of long distance telephone service that Marca-Tel carries through its network.

11. The Westel Defendants are also in the business of providing long-distance telephone service. On information and belief, Garner has been the President of both Westel Defendants since before January 1997, and Garner and his wife are the only shareholders. Westel owns switching equipment in Texas and has customers in Texas and elsewhere in the United States. Westel uses fiber-optic lines owned by third parties to carry its long-distance traffic. The pertinent third-party fiber-optic line running south from Westel's switching equipment connects with Marca-Tel's fiber-optic network in this District, and Marca-Tel's fiber-optic network located in this District then runs to Marca-Tel's switching equipment in Monterrey, Mexico.

12. Marca-Tel and Westel began a business relationship in 1997. As part of this business relationship, Marca-Tel handled "southbound" international long-distance telephone traffic from Westel that originated in the United States (or elsewhere) and terminated in Mexico. This southbound traffic traveled from Westel's switching equipment in Austin to Marca-Tel's fiber-optic network in this District and then over the border to Marca-Tel's switching equipment in Monterrey. Conversely, as part of their business arrangement, Marca-

Tel paid a fee to Westel to handle "northbound" international long-distance traffic originating in Mexico (or elsewhere) and terminating in the United States. The fiber-optic path that the parties agreed to use to carry the Marca-Tel/Westel long-distance traffic was known as the "Westel I trunk."

13. Marca-Tel and Westel also established a separate fiber-optic delivery pathway for business between them, known as the "Westel II trunk." The Westel II trunk followed the same route as the Westel I trunk and passed through the same switching equipment. Marca-Tel and Westel agreed that the Westel II trunk would only be used for future expansion after the Westel I trunk had reached its maximum capacity for carrying long distance traffic (projected at the time to occur in approximately 1999).

14. In January 1997, shortly after Marca-Tel and Westel began their business relationship, Garner was hired as the Director General of Marca-Tel (a position equivalent to chief executive officer). Westel, at the time, indirectly owned approximately 24.5% of Marca-Tel. After he became the Director General of Marca-Tel, Garner and Westel embarked on a scheme to defraud Marca-Tel, and make a substantial profit, by using the Westel II trunk to carry additional Westel southbound long-distance traffic to Mexico. For approximately fifteen months, from 1997 through late 1998, Defendants used the Westel II trunk to carry additional Westel southbound long-distance traffic without payment to Marca-Tel and without the knowledge or consent of Marca-Tel.

15. Garner and his Westel companies deliberately and fraudulently concealed the existence of their scheme to fleece Marca-Tel. Moreover, Defendants made repeated affirmative misrepresentations about the amount of Westel southbound long distance traffic being carried by Marca-Tel. The standard billing practice between Westel and Marca-Tel,

consisted of Westel sending monthly statements to Marca-Tel representing the total amount of southbound traffic Westel sent through Marca-Tel's network. Marca-Tel then sent monthly invoices to Westel based on the total number of long-distance minutes reported by Westel. Marca-Tel relied on Westel for an accurate monthly report of the total traffic, and Defendants knew that Marca-Tel relied on the accuracy of Westel's reports because Garner was the Director General of Marca-Tel.

16.  Westel, however, did not accurately report the total amount of southbound long distance traffic it sent to Marca-Tel. Instead, at Garner's direction, Westel sent Marca-Tel false and fraudulent reports every month showing only the amount of southbound traffic carried on the *Westel I* trunk, but Westel did not include in its monthly totals any of the southbound long distance traffic carried via the *Westel II* trunk. Due to Marca-Tel's reliance on Westel's fraudulent reports, Marca-Tel invoiced Westel only for the traffic carried on the Westel I trunk, and did not receive payment for any of the traffic carried via the Westel II trunk. Marca-Tel did not become aware of Defendants' unauthorized use of the Westel II trunk line, as described above, until an audit of Marca-Tel's business was conducted in April 2001 in connection with a proposed purchase of Marca-Tel shares by a third party.

17.  Garner and his Westel companies collected substantial profits from their scheme to defraud Marca-Tel. Westel collected payments for the Westel II long-distance traffic directly from the customers, but never paid Marca-Tel for any of this traffic. Marca-Tel, as a result of Defendants' fraudulent scheme, suffered over $4.6 million in damages consisting of the lost payments Marca-Tel was entitled to receive for carrying the additional traffic, but never did receive. As part of its damages, Marca-Tel has also suffered an out-of-pocket loss in the approximate amount of $4.8 million because it was obligated to pay, and did pay, its usual

contractual fee to Tel-Mex for each minute of long distance traffic carried through the Westel II trunk, even though it never received any payment from Westel for the Westel II traffic.

18. As a result of Defendants' scheme to defraud Marca-Tel, a criminal fraud action has been brought against Garner in Mexico.

### COUNT I – FRAUD (All Defendants)

19. The preceding factual statements and allegations are incorporated by reference as though fully set forth.

20. Defendants' conduct amounted to fraud on Marca-Tel by concealment of material facts. As Director General of Marca-Tel, Garner had the duty to disclose to Marca-Tel all material facts he knew about Marca-Tel's business operations. Garner, however, failed to disclose to Marca-Tel that he and his Westel companies were making unauthorized use of Marca-Tel's network via the Westel II trunk without paying Marca-Tel. On the contrary, despite his duty of disclosure to Marca-Tel, Garner used his position of power at Marca-Tel to make the scheme a reality and to fraudulently conceal Westel's unauthorized use of Marca-Tel's network via the Westel II trunk.

21. Defendants' conduct also amounted to fraud on Marca-Tel by means of affirmative false representations of material fact. During the period of time when Garner served as the Director General of Marca-Tel, the billing system between Westel and Marca-Tel required Westel to send monthly statements to Marca-Tel setting forth the total amount of southbound traffic Westel sent through Marca-Tel's network. The parties agreed that Marca-Tel would then send monthly invoices to Westel based on the total number of long-distance minutes reported by Westel. Defendants, however, did not accurately report the total amount of southbound long distance traffic sent to Marca-Tel. Instead, at Garner's direction, Westel sent Marca-Tel false

and fraudulent reports every month showing only the amount of southbound traffic carried on the Westel I trunk, but not including any of the southbound long distance traffic carried via the Westel II trunk. Defendants knew these reports were false because they were actually using the Westel II trunk at the time the reports were sent to Marca-Tel.

22. Defendants' unauthorized use of the Westel II line without payment was clearly material to Marca-Tel due to its financial impact on Marca-Tel. Defendants' conduct deprived Marca-Tel of the appropriate payments for carrying the Westel II traffic over its network, while at the same time obligating Marca-Tel to make out-of-pocket expenditures to Tel-Mex for carrying the Westel II traffic. Thus, rather than making a profit on the Westel II traffic, Marca-Tel incurred a significant loss because it paid substantial sums to Tel-Mex without being paid by Westel.

23. Defendants knew and intended that, by virtue of their conduct, Marca-Tel would be induced to carry the Westel II trunk traffic through its network and pay the associated fees to Tel-Mex, without receiving payment from Westel. Defendants knew that Marca-Tel would not allow them to use its network for free. Therefore, Garner fraudulently concealed Defendants' use of the Westel II trunk line, and Defendants misrepresented the total amount of southbound traffic sent from Westel to Marca-Tel so that Defendants could make, and in fact did make, substantial profits from the Westel II traffic without paying for the use of Marca-Tel's network.

24. Marca-Tel actually and justifiably relied on Defendants' misrepresentations. Marca-Tel relied on Defendants' fraudulent monthly reports about the total southbound traffic sent to Marca-Tel, because Marca-Tel used these fraudulent reports as the basis for its monthly invoices to Westel. Defendants knew that Marca-Tel relied on the accuracy

of Westel's reports as the basis for its billings. Marca-Tel's reliance was justified, because Marca-Tel relied on its U.S. partners for accuracy in its billings, and Garner was an indirect U.S. partner of Marca-Tel at the time as well as Director General of Marca-Tel.

25. Marca-Tel also actually and justifiably relied on Defendants' fraudulent concealment of the material fact that Westel was making unauthorized use of the Westel II trunk. Marca-Tel justifiably relied on Garner's silence and concealment of the fact that Defendants were making use of the Westel II trunk because Marca-Tel properly expected that Garner, as the Director General of Marca-Tel, would act in the best interests of Marca-Tel and disclose all material facts about Marca-Tel's business, including any use of the Westel II line. For the same reason, Defendants knew that Marca-Tel relied on Garner to disclose all material facts about Marca-Tel's business

26. Both Westel Defendants are liable to Marca-Tel for their own conduct, and are also vicariously liable for Garner's conduct under the doctrine of the vice-principal. At all pertinent times, Garner was a vice-principal of both Westel Defendants (on information and belief, the President of each company), and he acted within the scope of his authority as a vice-principal of Westel when he made use of the Westel II trunk without the knowledge or consent of Marca-Tel and directed that the false monthly statements be sent to Marca-Tel.

27. Both Westel Defendants are liable to Marca-Tel for their own conduct, and are also vicariously liable for Garner's conduct under the doctrine of *respondeat superior*. At all pertinent times, Garner was an employee and agent of both Westel Defendants and he acted within the scope of his authority as an agent and employee of Westel when he made use of the Westel II trunk without the knowledge or consent of Marca-Tel and directed that the false monthly statements be sent to Marca-Tel.

28. Both Westel Defendants are liable to Marca-Tel for their own conduct, and are also vicariously liable for Garner's conduct under the doctrine of ratification, even assuming, contrary to law and fact, that Garner acted outside the scope of his authority from Westel when he made use of the Westel II trunk without the knowledge or consent of Marca-Tel and directed that the false monthly statements be sent to Marca-Tel. Both Westel Defendants approved Garner's conduct by participating in the scheme to use the Westel II trunk and accepting profits from use of the Westel II trunk without paying Marca-Tel. Both Westel Defendants knew about Garner's scheme, his concealment of the scheme from Marca-Tel, and his false representations in the monthly reports to Marca-Tel, and intended to validate Garner's conduct and benefit financially from it.

29. Defendants' fraud on Marca-Tel proximately caused Marca-Tel to suffer damages in excess of $9.4 million. Had Defendants informed Marca-Tel that they were using the Westel II trunk, Marca-Tel would not have allowed Defendants to use Marca-Tel's network for free. Defendants were only able to use the Westel II line for free to make substantial profits because Garner concealed this fact, Defendants misrepresented the total amount of southbound long distance traffic sent from Westel to Marca-Tel, and Marca-Tel relied on Defendants' silence and misrepresentations. As a result of Defendants' conduct, Marca-Tel was deprived of payment for carrying the Westel II traffic, but also paid Tel-Mex the mandatory fee for each minute of long distance traffic surreptitiously carried through the Westel II trunk.

30. Marca-Tel seeks recovery of its actual damages, in excess of $9.4 million, from all Defendants. Marca-Tel also seeks recovery of exemplary damages from all Defendants to punish them for defrauding Marca-Tel.

31. Because Defendants are joint tortfeasors in their fraud on Marca-Tel, each Defendant should be held jointly and severally liable for all of Marca-Tel's damages, both actual and exemplary.

## COUNT II – AIDING & ABETTING FRAUD (Westel)

32. The preceding factual statements and allegations are incorporated by reference as though fully set forth.

33. Westel aided and abetted Garner's fraud on Marca-Tel, as previously described, and is therefore liable for Marca-Tel's damages resulting from the fraud. Westel directly and knowingly participated in, and materially aided and assisted, Garner's scheme to use the Westel II trunk without Marca-Tel's knowledge or consent, and without payment to Marca-Tel. The United States portion of the Westel II trunk traffic was routed through Westel's switching equipment in Austin. Moreover, Westel gained substantial profits from the use of the Westel II trunk by collecting payments directly from its long distance customers, but never paying Marca-Tel for any of the traffic.

34. Westel knew that it was participating in a scheme to make use of the Westel II trunk without Marca-Tel's knowledge or consent, and intended to deceive and defraud Marca-Tel and/or assist Garner in deceiving and defrauding Marca-Tel so that Westel could gain substantial profits from the Westel II traffic. Alternatively, Westel had a general awareness of its role in the scheme to make unauthorized use of the Westel II trunk, and acted with reckless disregard concerning whether Marca-Tel would be deceived by the Westel II scheme and Defendants' conduct.

35. Westel aided and abetted Garner in perpetrating fraud on Marca-Tel by providing the instrumentality that made the fraudulent Westel II scheme possible, specifically

Westel's switching equipment in Austin and the long-distance telephone traffic generated from its customers. Therefore, Westel's conduct in aiding and abetting Garner's fraud was a proximate cause of damage to Marca-Tel, because Marca-Tel was deprived of any payment for the traffic carried through the Westel II trunk.

36. Because the Westel Defendants aided and abetted Garner's fraud on Marca-Tel, the Westel Defendants should be held jointly and severally liable for all of Marca-Tel's damages, both actual and exemplary.

### COUNT III - CIVIL CONSPIRACY TO COMMIT FRAUD (All Defendants)

37. The preceding factual statements and allegations are incorporated by reference as though fully set forth.

38. Defendants' conduct and scheme constituted a conspiracy to defraud Marca-Tel. Garner, in his capacity as Director General of Marca-Tel, acted together with agents and/or employees of the Westel Defendants for the purpose of using the Westel II trunk without the consent of Marca-Tel to make substantial profits, and also for the purpose of concealing this fact from Marca-Tel and sending false monthly reports to Marca-Tel that misrepresented the amount of southbound long distance traffic sent from Westel to Marca-Tel. Garner and the Westel Defendants had a "meeting of the minds" about the object of their conspiracy, because each knew and intended that the goal of their concerted action was a scheme to use the Westel II trunk without the knowledge or consent of Marca-Tel, and without paying Marca-Tel, thereby reaping substantial profits.

39. Defendants overtly acted in furtherance of their conspiracy. These overt acts include, but are not limited to, 1) using the Westel II trunk to carry "southbound" long distance traffic through Marca-Tel's network, 2) accepting substantial fees from their use of the

Westel II trunk without paying Marca-Tel for the use of its network, and 3) sending false monthly reports to Marca-Tel that misrepresented the amount of southbound long distance traffic sent from Westel to Marca-Tel.

40. Defendants succeeded in their conspiracy to defraud Marca-Tel, and made substantial profits by using the Westel II trunk to carry long-distance telephone traffic without Marca-Tel's knowledge or consent and without paying Marca-Tel. Defendants' conspiracy proximately caused damage to Marca-Tel in an amount exceeding $9.4 million because it was deprived of payment for the Westel II traffic, but was required to pay, and did pay, its mandatory contractual fees to Tel-Mex for carrying the Westel II traffic.

41. Marca-Tel seeks recovery of its actual damages, in excess of $9.4 million, from all Defendants. Marca-Tel also requests exemplary damages against all Defendants to punish them for the fraud they perpetrated on Marca-Tel by means of their conspiracy.

42. By virtue of each Defendant's participation in this conspiracy, each Defendant should be held jointly and severally liable for all of Marca-Tel's damages, both actual and exemplary.

## COUNT IV – CONSTRUCTIVE TRUST (All Defendants)

43. The preceding factual statements and allegations are incorporated by reference as though fully set forth.

44. Because Defendants have committed fraud on Marca-Tel, and thereby obtained substantial financial benefit at Marca-Tel's expense, a constructive trust should be imposed on the funds Defendants received as a result of their fraud, with Marca-Tel as the beneficiary of the constructive trust.

45. A constructive trust imposed on the fruits of Defendants' fraud is necessary and appropriate to prevent Defendants from being unjustly enriched, because they reaped substantial profits from the Westel II long-distance traffic, without paying Marca-Tel for the use of its network, in full knowledge that Marca-Tel would be forced to pay Tel-Mex for carrying the Westel II traffic.

46. Defendants therefore request that this Court exercise its equitable power to impose a constructive trust on the funds obtained by Defendants as a result of their fraud described herein, and declare Marca-Tel the equitable owner of such funds.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury.

## PRAYER

For the foregoing reasons, Marca-Tel requests that this Court, after trial, enter judgment in favor of Marca-Tel and against Defendants for:

i. actual damages in excess of $9.4 million incurred by Marca-Tel as a result of Defendants' conduct;

ii. exemplary damages;

iii. costs;

iv. prejudgment and post judgment interest;

v. imposition of a constructive trust on the funds Defendants gained as a result of their fraudulent conduct described herein; and

vi. such other and further relief as is just.

Dated:     February 25, 2002.

Respectfully submitted,

BROBECK, PHLEGER & HARRISON LLP

By: _____
Edward F. Fernandes
Attorney in Charge
State Bar No.06932700
Southern District Bar No. 2638
4801 Plaza on the Lake
Austin, Texas 78746
(512) 330-4000
Fax (512) 330-4001

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF MARCA-TEL, S.A.de C.V.**

OF COUNSEL:

BROBECK, PHLEGER & HARRISON LLP
Michael Singley
State Bar No.00794642
Southern District Bar No. 28138
4801 Plaza on the Lake
Austin, Texas 78746
(512) 330-4000
Fax (512) 330-4001

    and

SOLAR & ASSOCIATES LLP
James DeAnda
State Bar No. 05624000
Southern District Bar No. 15484
Williams Tower
2800 Post Oak Blvd.
Suite 6300
Houston, Texas 77056
(713) 850-1212
Fax (713) 850-1199