UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARCA-TEL, S.A. DE C.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-034 |
| | § | |
| THOMAS K. GARNER; WESTEL, INC.; | § | |
| and WESTEL INTERNATIONAL, INC., | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF MARCA-TEL'S RESPONSE TO
DEFENDANTS' MOTION TO TRANSFER VENUE
AND REQUEST FOR ORAL ARGUMENT

Plaintiff Marca-Tel, S.A. de C.V. ("Plaintiff") files its response in opposition to

Defendants' motion to transfer venue to the Western District of Texas, Austin Division, under 28

U.S.C. §1404(a). Plaintiff respectfully requests a hearing for oral argument on the motion.

SUMMARY OF ARGUMENT

Defendants accuse Plaintiff of having only a "fig leaf for asserting venue in the Southern

District" and insinuate that Plaintiff must be forum shopping because there is no legitimate

reason for this Court to retain venue of this case. Defendants' argument wilts under even the

most casual scrutiny because Defendants have conceded that venue is proper in this District, and

a proper balancing of the venue transfer factors clearly shows that venue in this Court best serves

the convenience and interests of all the parties and witnesses in this case.

Plaintiff is a Mexican corporation with its headquarters in Monterrey, Mexico, and

therefore Plaintiff does not have a "home" forum in the United States where it can bring suit.

Plaintiff's most convenient option for a federal forum in the United States is to choose a court

near to Monterrey where venue is proper. That is exactly what Plaintiff has done in this case.

Defendants' request for a transfer of venue should be denied because it takes into account only their own convenience and interests, but utterly ignores Plaintiff's convenience and legitimate interest in its choice of this forum. The law, by contrast, requires a consideration and balancing of the convenience and interests of *all* parties and witnesses, which clearly favors venue in this Court over the Austin Division of the Western District of Texas. Venue in this Court equalizes the relative inconveniences to the parties and witnesses by "splitting the difference" between Monterrey, Mexico, and Austin, Texas. A transfer of venue, by contrast, would simply shift the entire burden of inconvenience to Plaintiff, its witnesses, and certain third party witnesses it has identified.

Finally, maintaining venue in this Court would not lead to any injustice because both this case and the Defendants have a substantial connection to the Southern District. Defendants have several offices in this District and a substantial customer base in this District. All of the international long distance traffic at issue in this case traveled through a fiber-optic pathway located in this District and through transmission equipment owned by Marca-Tel in this District. On information and belief, some portion of the long distance traffic at issue in this case was generated from Westel's customers in this District, who have an interest in making sure that their legitimate commerce is not used to perpetrate a fraud.

## FACTUAL BACKGROUND

1.      Defendants defrauded Plaintiff Marca-Tel of over $9.4 million, and therefore Plaintiff brought this action against Defendants sounding in common-law fraud, conspiracy to commit fraud, aiding and abetting fraud, and imposition of a constructive trust. Marca-Tel is in the business of providing long-distance telephone service, and owns a fiber-optic network located primarily in Mexico (but also in Texas, near McAllen), and transmission equipment in

McAllen, Texas.  Westel is also in the long-distance telephone service business, with switching equipment in Austin and a customer base located throughout Texas, including the Southern District of Texas.  Defendant Garner and his wife are the only shareholders in Westel.  Marca-Tel began a business relationship with Garner and Westel in 1997, agreeing as part of that relationship that Westel would pay Marca-Tel a fee to carry certain "southbound" international long-distance traffic originating with Westel in the United States and terminating in Mexico.  Westel, at the time, indirectly owned 24.5% of Marca-Tel.

2.      Shortly after Marca-Tel and Westel began doing business in 1997, Garner became the chief executive officer of Marca-Tel.  Garner then abused his position of power at Marca-Tel by devising a scheme for Westel to use Marca-Tel's fiber-optic network to carry long distance traffic for Westel without payment, and without Marca-Tel's knowledge or consent.  All of the long-distance traffic at issue in this case ran through a fiber optic pathway between Defendants' switch in Austin and Marca-Tel's switch in Monterrey, a substantial portion of which is located in this District.  All of the long distance traffic at issue in this case ran through transmission equipment in McAllen, Texas owned by Marca-Tel.

3.      Garner and his Westel companies made a substantial profit from this scheme because they collected all the customer payments for the additional long distance traffic, but never paid Marca-Tel for using its network to carry the traffic into Mexico.  Marca-Tel suffered over $9.4 million in damages due to Defendants' scheme, and also seeks exemplary damages to punish Garner and Westel.

## ARGUMENT

I.    **DEFENDANTS HAVE FAILED TO CARRY THEIR HEAVY BURDEN ON THIS DISCRETIONARY MOTION TO DEMONSTRATE THAT PLAINTIFF'S CHOICE OF THIS PROPER VENUE SHOULD BE DISTURBED**

4.    At the outset, it is important to note that venue is proper in the Southern District of Texas for the reasons set forth in Plaintiff's Original Complaint.  Defendants did not file a Rule 12(b)(3) motion to dismiss this case on the ground that venue is improper.  Instead, they filed a motion under 28 U.S.C. §1404(a) asking this Court for a discretionary transfer from this proper venue because the Austin Division of the Western District of Texas is allegedly most convenient for all the parties and witnesses.  By filing a motion under 28 U.S.C. §1404(a), Defendants have necessarily conceded that venue is proper in this Court.  *Keene v. International Union of Operating Engineers*, 569 F.2d 1375, 1378 (5th Cir. 1978) ("By its very nature, a Section 1404 motion affirms the propriety of venue in the forum where a party enters the motion . . . .").

5.    The decision whether to transfer venue is committed to this Court's sound discretion, and will not be reversed on appeal absent an abuse of discretion.  *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989), *cert. denied sub nom. Dow Chemical Co. v. Greenhill*, 493 U.S. 935 (1989); *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981), *cert. denied*, 456 U.S. 918 (1982), *disapproved on other grounds by Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).  Defendants have the burden to prove that a transfer of venue is warranted.  *Manning*, 366 F.2d at 698.  The burden is a heavy one, and the motion should not be granted unless the plaintiff's choice of forum "is clearly outweighed by other considerations."  *Howell*, 650 F.2d at 616.  *See Houston Trial Reports v. LRP Publications, Inc.*, 85 F. Supp. 2d 663, 667 (S.D. Tex. 1999) ("Unless the

4

balance of factors strongly favors the moving party, the Plaintiff's choice of forum generally should not be disturbed."); *Gurrola v. Griffin & Brand Sales Agency*, 524 F. Supp. 115, 117 (S.D. Tex. 1980) ("heavy burden").

6.    For the reasons set forth below, Defendants have failed to carry their burden to justify a transfer of venue to the Austin Division of the Western District of Texas.

## II.    DEFENDANTS' MOTION IS FUNDAMENTALLY FLAWED BECAUSE IT CONSIDERS ONLY DEFENDANTS' CONVENIENCE AND COMPLETELY IGNORES PLAINTIFF'S LEGITIMATE INTERESTS IN THIS VENUE

7.    Defendants have accurately listed the factors this Court should consider in determining whether they have carried their burden to justify a transfer of venue. Defendants' evaluation of the applicable factors, however, is fundamentally flawed because the motion considers only Defendants' own convenience and interests, but utterly ignores Plaintiff's convenience and legitimate interest in its choice of this forum. Defendants' self-centered approach is erroneous and completely unsupportable because the convenience and interests of *all* parties and witnesses must be considered in evaluating a motion to transfer venue. *See Manning*, 366 F.2d at 698; *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 913 (S.D. Tex. 2001); *Houston Trial Reports*, 85 F.Supp.2d at 668-671; *Lebouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1059-1061 (S.D. Tex. 1998).[1]

8.    A proper evaluation of the applicable factors, considering *all* parties and witnesses (and not just Defendants), demonstrates that Defendants have failed to carry their heavy burden to justify a transfer of venue. The balance of factors favors this Court because it

---

[1] In an attempt to persuade this Court to don blinders and ignore Plaintiff's interests, Defendants quote *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). *See* Defendants' Motion to Transfer Venue, p. 2. *Bigham* does not support Defendants' argument because the quoted portion of the opinion addresses a Rule 12(b)(3) motion to dismiss for improper venue, not a discretionary motion to transfer venue under 28 U.S.C. §1404. On the contrary, in the portion of *Bigham* addressing the motion to transfer venue the Court clearly considered and balanced the convenience and interests of all parties. *Bigham*, 123 F. Supp. 2d at 1048-51.

equalizes the relative inconveniences to the parties and witnesses, which are located in Monterrey, Mexico, and Austin, Texas. A transfer of venue to the Austin Division of the Western District of Texas would simply shift the entire burden of inconvenience to Plaintiff.

> **A.    The availability and convenience of the parties and key witnesses favors the retention of venue in this Court to "split the difference" between Austin and Monterrey.**

9.    Defendants concede that the availability and convenience of the key witnesses and parties is the most important factor in determining whether they have carried their burden to justify a discretionary transfer of venue. Defendants' Motion to Transfer Venue, p. 3, ¶ 10. Defendants argue that, because they and certain of the witnesses they have identified in this case are located in the Western District of Texas, a transfer of venue serves the convenience of all parties and witnesses.

10.    Defendants, however, have utterly disregarded the convenience of the Plaintiff, a Mexican corporation headquartered in Monterrey, as well as the convenience of the employee and third party witnesses identified by Plaintiff for whom this Court is a far more convenient forum. Defendants' complete disregard for Plaintiff's convenience can be summed up in one incredible quote from their motion: "[A] transfer from this District would be neutral to witnesses in Mexico." Defendants' Motion to Transfer Venue, p. 3, ¶ 15. In the circumstances of this case, the assertion is preposterous.

11.    In addition to identifying witnesses in the Western District, Defendants have also identified 5 "key" witnesses who reside in Mexico. Defendants' Motion to Transfer Venue, p. 3, ¶ 15. Plaintiff further identifies the following key witnesses that it may call to testify on its behalf:[2]

---

[2] Additional information about these witnesses is set forth in the Affidavit of Cesar Eduardo Santacruz Polendo, attached as Exhibit 1.

1. Gustavo Mario de la Garza Ortega (indirect majority shareholder of Marca-Tel, and Chairman of the Board of Marca-Tel)
2. Cesar Eduardo Santacruz Polendo (Marca-Tel employee)
3. Carlos Gerardo Montemayor Garza (Marca-Tel employee)
4. Timothy James Heaney (Marca-Tel employee)
5. Luis Javier Montes Espino-Barro (Marca-Tel employee)
6. Luis Enrique Rios Sanchez (third-party witness)

The witnesses employed by Marca-Tel, as well as Mr. de la Garza Ortega, reside and work in Monterrey, Mexico. *See* Affidavit of Cesar Eduardo Santacruz Polendo, ¶ 2-3, attached as Exhibit 1. Mr. Rios Sanchez, a third party witness, resides and works in the suburbs of Monterrey in Neuvo Leon, Mexico. *Id.* ¶ 3.

12.    Because Brownsville is much closer to Monterrey than Austin, Brownsville is a far more convenient forum for Plaintiff and the employee and third-party witnesses Plaintiff has identified. The drive between Monterrey and Brownsville takes 3 hours. *Id.* ¶ 5. By contrast, the drive from Monterrey to Austin takes approximately 6 hours, and would require all of the Mexican national witnesses to obtain special permits from the INS that are not necessary for a drive to Brownsville. *Id.* ¶ 5-6. There are no direct flights from Monterrey to Austin, and airplane travel from Monterrey to Austin generally requires at least 5 hours (door-to-door) given the connection schedules through Houston or Dallas and the logistical hurdles of international air travel (particularly after September 11, 2001). *Id.* ¶ 6.

13.    Transferring venue to Austin will place a heavy burden on Plaintiff and the employee and third party witnesses identified by Plaintiff. Venue in this Court allows these witnesses to drive to court rather than fly, and also allows them to travel to court and return home in the same day. A transfer of venue to Austin would require these witnesses to make two international airplane flights and devote an overnight stay in Austin for each court appearance. *Id.* ¶ 5-6.

7

14.    By contrast, Defendants and their witnesses will experience very little inconvenience travelling to this Court from Austin. *See Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1400 (S.D. Tex. 1992) (burden of travel from Dallas to Galveston "hardly compelling"). Southwest Airlines provides a daily nonstop flight from Austin to Harlingen, Texas with a duration of approximately one hour. *See* Affidavit of Michael C. Singley, ¶ 2, attached as Exhibit 3. The drive from the Harlingen Airport to Brownsville, a distance of approximately 32 miles, takes less than 40 minutes. *Id.* at ¶ 3. Indeed, even with venue retained in this Court, Defendants' witnesses may have a shorter travel time to court than Plaintiff's witnesses.

15.    It is readily apparent that the balance of convenience for ***all*** parties and witnesses favors this Court over the Austin Division of the Western District. Retaining venue in this Court "splits the difference" between Monterrey and Austin, providing a fair balance of convenience between both sides, with roughly equal travel time for all witnesses. Transfer of venue to Austin, by contrast, would allow Defendants to proceed in their home city, imposing the entire burden of inconvenience on Plaintiff and the employee and third party witnesses Plaintiff has identified. A motion to transfer venue will not be granted when it simply shifts the burden of inconvenience from one party to the other. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2001); *Salem Radio Representatives, Inc. v. Can Tel Market Support Group*, 114 F. Supp. 2d 553, 558 (W.D. Tex. 2000); Wright, Miller & Cooper, *Federal Practice & Procedure* §3848 at 383-6.

16.    Finally, the availability of third-party witnesses at trial must also be considered. *See Houston Trial Reports*, 85 F. Supp. 2d at 669. All of the third-party witness listed in Defendants' motion are alleged to reside in Texas. This Court has the power to subpoena

8

witnesses who reside anywhere in Texas, and therefore any party will have the ability to call these third-party witnesses for live testimony at trial in this Court. *Mohamed*, 90 F. Supp. 2d at 778 (discussing 1991 revision to Federal Rule of Civil Procedure 45).

17.    The balance of conveniences, the most important factor in this analysis, weighs strongly against transfer of venue to the Austin Division of the Western District of Texas.

**B.    Plaintiff's choice of venue in this Court is entitled to deference**

18.    Defendants claim that Plaintiff's choice of forum should receive no deference in this case. This contention flies in the face of well-settled Fifth Circuit authority. "Plaintiff's privilege to choose, or not be ousted from, his chosen forum is highly esteemed." *Manning,* 366 F.2d at 698. *See Peteet*, 868 F.2d at 1436 ("To begin with, the plaintiff is generally entitled to choose the forum."); *Smirch*, 164 F. Supp. 2d at 913 (plaintiff's choice of forum "generally entitled to great deference"); *Salem Radio Representatives, Inc.*, 114 F. Supp. 2d at 558 ("Finally, the Plaintiff's choice of forum is 'highly esteemed' and should not be lightly disregarded."). In the Fifth Circuit, the plaintiff's choice of forum is clearly an important consideration in analyzing a motion to transfer venue.

19.    Defendants try to avoid this well-settled authority by arguing that all deference to a Plaintiff's choice of venue disappears if the Plaintiff does not reside in the district. This argument is simply meritless: "The time has come to lay this ungrounded, 'disappearing deference' proposition to rest; and this Court does so today. In this Court, deference to the plaintiff's choice of forum *never* 'disappears' under *any* circumstances." *Mohamed*, 90 F. Supp. 2d at 774 (emphasis in original). *Mohamed* is the most comprehensive analysis on this issue from a United States District Court in Texas. The Southern District also accords deference to a nonresident plaintiff's choice of venue:

AUSLIB1\MRH\152060.01

> [T]he Court declines to disturb the forum chosen by Plaintiff . . . . Although Plaintiff is not a resident of the Galveston Division, he has chosen to file his suit here, and the Court finds no factors that outweigh this choice.

*Lebouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1061 (S.D. Tex. 1998) (denying transfer of venue in case filed by plaintiff residing in Louisiana).

20.    Defendants cite one case from a federal court in Texas – *Americas Ins. Co. v. Engicon, Inc.*, 894 F. Supp. 1068, 1075 (S.D. Tex. 1995) – but it does not support their "disappearing deference" argument. Instead, *Engicon* provides that the deference accorded a nonresident's choice of forum is somewhat less than the deference accorded a resident's choice of forum. The Court's holding is instructive: "[W]here all of the relevant factors weigh heavily in favor of transfer, the Plaintiff's choice of forum alone is not controlling." *Engicon*, 894 F. Supp. at 1076. Obviously, holding that a nonresident plaintiff's choice of forum cannot *solely* govern the analysis is a far cry from holding that it receives no deference at all. Both *Mohamed* and *Lebouef* (decided by the same District Judge who authored *Engicon*) make clear that a nonresident plaintiff's choice of forum is entitled to deference. *Mohamed*, 90 F. Supp. 2d at 774; *Lebouef*, 20 F. Supp. 2d at 1061. *See In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999).

21.    Deference to a nonresident's choice of forum is particularly appropriate in a case like this, where the plaintiff is a Mexican corporation that does not have a "home" forum in the United States where it can bring suit. A foreign plaintiff's most convenient option for a federal forum in the United States is to choose a nearby federal court where venue is proper, as Plaintiff has done in this case.

> [I]t is sufficient that the forum is near the plaintiffs' principal place of business and/or that it is consistent with the plaintiff's legitimate concerns. In other words, if the plaintiff's choice of forum relates to its legitimate, rational concerns, then the plaintiff's choice of forum is still accorded substantial weight.

*Waste Distillation Technology, Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991). Because Plaintiff has no "home" forum in the United States where it can bring suit, it has an entirely legitimate interest in choosing a convenient forum near to Monterrey, such as this Court.

22.    Plaintiff's choice of venue in this Court is entitled to deference and weighs against transfer of venue to the Austin Division of the Western District of Texas.

**C.    Defendants, and this case, both have substantial ties to the Southern District**

23.    Defendants also erroneously claim that this case has no connection to the Southern District of Texas. On the contrary, both this case and the Defendants have substantial ties with the Southern District. In this case, Defendants defrauded Plaintiff by sending "southbound" international long distance traffic through Marca-Tel's fiber-optic network for termination in Mexico, without paying for the use of Marca-Tel's network. Defendants accomplished this fraud by sending the southbound long distance traffic over a fiber-optic pathway running through this District between Defendants' switching equipment in Austin and Plaintiff's switching equipment in Monterrey, Mexico. Every minute of illicit long distance traffic at issue in this case traveled a substantial distance through this District via that fiber-optic pathway. *See* Affidavit of Timothy James Heaney, ¶ 3-4, attached as Exhibit 2. Moreover, every minute of long-distance traffic at issue in this case traveled through transmission equipment owned by Marca-Tel in McAllen, Texas, located in this District. *Id.* ¶ 3-4. Therefore, this District contains a substantial portion of the very instrumentality Defendants used to accomplish the fraud on Plaintiff.

24.    Defendants also have a strong connection with the Southern District because they regularly conduct substantial business throughout the District. Westel has offices in several

11

locations in the Southern District of Texas, including Houston, Corpus Christi, and McAllen. *See* Affidavit of Michael Singley, ¶ 4, attached as Exhibit 3. Westel also has a substantial customer base for long-distance telephone service in the Southern District. Westel's customer base in the Southern District further connects the Southern District to this case because, on information and belief, some portion of the "southbound" long distance traffic at issue in this case was generated from customers in the Southern District. The citizens of the Southern District certainly have an interest in making sure that their legitimate commerce is not used by Defendants as a means to accomplish a fraud.

25.    Defendants' extensive and regular business activity in this District also gives them a connection to the District that mitigates any inconvenience they claim as a result of maintaining venue in this Court. *See Continental Airlines, Inc.*, 805 F. Supp. at 1400 ("Defendants are corporations which have extensive contacts with the Southern District of Texas"). Defendants' protests that travelling to Brownsville is inconvenient for them ring hollow given that they have offices in McAllen and Corpus Christi. Because they conduct substantial business in this District, Defendants have little ground to complain that appearing before a court in this District is inconvenient. Apparently, Defendants want to have their cake and eat it too – they have offices throughout the Southern District, are eager to do business with residents of the Southern District, and regularly send long-distance telephone traffic through the Southern District to Mexico, but contend that only a court in their home town should be allowed to judge their conduct.

26.    This factor weighs against transfer, because this case and the Defendants have substantial ties to this District. The fact that certain conduct related to this case occurred outside this District is of little importance given the strong connections to this District, the deference due

12

the Plaintiff's choice of forum and, most importantly, the fact that the convenience of all witnesses and parties strongly favors venue in this Court. "[A] case may not be transferred simply because the moving party would prefer another forum or because the claims arose elsewhere." *Continental Airlines, Inc.*, 805 F. Supp. at 1395 n.10.

**D.    The location of documents in both Austin and Monterrey favors retention of venue in this Court**

27.    Before the advent of copying machines, transporting and using a party's books and records at trial could be very inconvenient, especially if one or more parties used a large volume of records. The courts currently place very little weight on this factor, however, given the ease with which documents can now be copied and transported. *See EEOC v. Mustang Mobile Homes*, 88 F. Supp. 2d 722, 726 (W.D. Tex. 1999); *In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d at 690. In this case, the location of the documents weighs against transfer of venue because Defendants' documents are located in Austin, Texas, and Plaintiff's documents are located in Monterrey, Mexico. Defendants obviously would prefer to have the suit in Austin because it tips the balance of convenience for use and transport of documents completely in their favor. Retaining venue in this Court, by contrast, "splits the difference" between the locations of the parties' documents and therefore achieves a fair balance of convenience for all the parties, rather than shifting the entire burden of inconvenience to Plaintiff.

**E.    Transfer of venue will delay this case and prejudice Plaintiff**

28.    This factor weighs against transfer because a transfer of venue to Austin will inevitably delay the progress of this case while the transfer is effected, a new schedule is implemented, etc. Delay is inherent in any transfer of venue. *Lebouef*, 20 F. Supp. 2d at 1061

13

("Were this Court to grant Defendants' motion, significant delays would necessarily occur in the transfer . . . .").

> **F.     Location of counsel favors retention of venue in this Court because Defendants have retained counsel in Brownsville and Plaintiff has retained counsel in the Southern District**

29.     This factor, the least important in the analysis, "is afforded little or no consideration." *Smirch,* 164 F. Supp. 2d at 913; *see Houston Trial Reports,* 85 F. Supp. 2d at 671; *Mustang Mobile Homes,* 88 F. Supp. 2d at 726.  In this case the location of counsel weighs against transfer of venue because Defendants have retained counsel in Brownsville and Plaintiff has also retained counsel in the Southern District.[3]

## III.    CONCLUSION

30.     The balance of applicable factors, most importantly the convenience of all witnesses and parties, weighs strongly in favor of retaining venue in this Court.  Accordingly, Defendants' motion to transfer venue to the Austin Division of the Western District of Texas should be denied.  Plaintiff respectfully requests a hearing for oral argument on the motion.

---

[3] Defendants have retained Mitchell Chaney of Rodriguez, Colvin & Chaney in Brownsville.  Plaintiff has retained James DeAnda of Solar & Associates in Houston, Texas.

AUSLIB1\MRH\152060.01

Respectfully submitted,

BROBECK, PHLEGER & HARRISON LLP

By: *Edward Fernandes*

       Edward F. Fernandes
       State Bar No.06932700
       Southern District Bar No. 2638
       4801 Plaza on the Lake
       Austin, Texas 78746
       (512) 330-4090
       Fax (512) 330-4001

ATTORNEY-IN-CHARGE FOR
PLAINTIFF MARCA-TEL, S.A. de C.V.

OF COUNSEL:

BROBECK, PHLEGER & HARRISON LLP
Michael Singley
State Bar No.00794642
Southern District Bar No. 28138
Ashley Rodgers
State Bar No. 24033133
4801 Plaza on the Lake
Austin, Texas 78746
(512) 330-4000
Fax (512) 330-4001

     and

SOLAR & ASSOCIATES LLP
James DeAnda
State Bar No. 05624000
Southern District Bar No. 15484
Williams Tower
2800 Post Oak Blvd.
Suite 6300
Houston, Texas 77056
(713) 850-1212
Fax (713) 850-1199

AUSLIB1\MRH\152060.01

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to Defendants'

Motion to Transfer Venue has been served via certified mail, return receipt requested, on April

__5__, 2002, on all parties of record as indicated below:

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Patton G. Lochridge
Carlos R. Soltero
1300 Capitol Center
919 Congress Avenue
Austin, Texas 78701

RODRIGUEZ, COLVIN, & CHANEY, L.L.P.
Mitchell C. Chaney
1201 East Van Buren
Brownsville, Texas 78520

ATTORNEYS FOR DEFENDANTS TOMMY GARNER, WESTEL, INC., AND WESTEL
INTERNATIONAL, INC.


_____
Michael Singley

AUSLIB1\MRH\152060.01



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARCA-TEL, S.A. DE C.V.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. B-02-034** |
| | § | |
| **THOMAS K. GARNER; WESTEL, INC.;** | § | |
| **and WESTEL INTERNATIONAL, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF CESAR EDUARDO SANTACRUZ POLENDO

UNITED STATES OF MEXICO      §

                                      §

STATE OF NUEVO LEON          §

Personally appeared before me, an official of the United States Consulate in Monterrey, Mexico, authorized to administer oaths, Cesar Eduardo Santacruz Polendo, who after first being duly sworn, states:

1. My name is Cesar Eduardo Santacruz Polendo. I am over eighteen years of age, have never been convicted of a felony or crime involving moral turpitude and am in all other ways fully competent to make this affidavit. I am a citizen of the United States of Mexico, and my address is Av. San Jeronimo 210 Pte., Col. San Jeronimo, 64640 Monterrey, Nuevo Leon, Mexico. I reside and work in Monterrey, Nuevo Leon, Mexico. I have personal knowledge of all the facts contained in this affidavit, and all the facts contained in this affidavit are true and correct.

2. I am currently employed as the General Counsel of Marca-Tel, S.A. de C.V., the Plaintiff in this case ("Marca-Tel"). I have been the General Counsel of Marca-Tel since August 1996, and as the General Counsel I work under the direct supervision of the Director General of Marca-Tel, a position similar to Chief Executive Officer. I may be called as a witness in this case to testify on behalf of Plaintiff Marca-Tel regarding the legal structure and corporate governance of Marca-Tel, the regulation of the Mexican telecommunications industry, and Marca-Tel's legal relationship with, and obligations to, Telefonos de Mexico, S.A. de C.V. (TELMEX) the Mexican national telephone company.

3. At this time, Marca-Tel has identified the following additional witnesses that it may call to testify on its behalf in this case:

    a. **Carlos Gerardo Montemayor Garza.** Mr. Montemayor Garza has been employed by Marca-Tel since November 1996. He is currently the Chief Financial Officer of Marca-Tel, a position he has held since July 1999. As the Chief Financial Officer, he works under the direct supervision of the General Director of Marca-Tel. From November 1996 until July 1999, he was employed as a Financial Officer and worked under the direct supervision of the previous Chief Financial Officer of Marca-Tel. Mr. Montemayor Garza has knowledge of the billing records, international rates and costs incurred in connection with the termination of local and international long-distance telephone traffic by Marca-Tel in Mexico, including the Westel long-distance traffic at issue in this case. He also has knowledge of Marca-Tel's financial records and accounts receivable, including such records relevant to Westel. Mr. Montemayor Garza is a citizen of Mexico who currently resides and works in Monterrey, Nuevo Leon, Mexico.

    b. **Timothy James Heaney Noe.** Mr. Heaney has been employed as the Chief Network Officer of Marcatel since December 1996. He has been involved in, and has knowledge concerning, all the operations of Marcatel's entire fiber-optic network and associated equipment. Mr. Heaney also has knowledge about the fiber-optic pathway and associated equipment used for long-distance traffic sent from Westel to Marca-Tel. Mr. Heaney also has knowledge about data regarding long distance traffic sent from Westel to Marca-Tel, as recorded in Marca-Tel's equipment. Mr. Heaney is a citizen of the United States of America who currently resides and works in Monterrey, Nuevo Leon, Mexico.

    c. **Luis Javier Montes Espino-Barros.** Mr. Montes Espino-Barros has been employed as Marca-Tel's Costs Manager since December 1999. He has knowledge of bill records, international rates and costs incurred in connection with the termination of local and international traffic by Marca-Tel in Mexico, including the Westel long-distance traffic at issue in this case. Mr. Montes Espino-Barros is a citizen of Mexico who currently resides and works in Monterrey, Nuevo Leon, Mexico.

    d. **Luis Enrique Rios Sanchez.** Mr. Rios Sanchez was employed as Marca-Tel's Costs Manager from January 1997 to August 1999. He has knowledge of bill records, international rates and costs incurred in connection with the termination of local and international traffic by Marca-Tel in Mexico, including the Westel long-distance traffic at issue in this case. He is a citizen of Mexico who currently works and resides in San Pedro Garza García, Nuevo Leon, Mexico (a suburban area of Monterrey).

e.   **Gustavo Mario de la Garza Ortega.** Mr. de la Garza is the indirect majority shareholder of Marca-Tel and Chairman of the Board of Directors of Marca-Tel. He is not currently employed by Marca-Tel. Don Gustavo has knowledge regarding the management, operations, finances, and business of Marca-Tel from its inception to the present, concerning Defendant Tommy Garner's service as Director General of Marca-Tel, and concerning Marca-Tel's business relationship with the Westel Defendants. Mr. de la Garza is a citizen of Mexico who currently resides and works in Monterrey, Nuevo Leon, Mexico.

4.   I have lived in Monterrey, Mexico for 36 years. I have frequently traveled to Texas, including travel to Brownsville and Austin. I am familiar with travel and travel times from Monterrey, Mexico to Austin, Texas and from Monterrey, Mexico to Brownsville, Texas, both by automobile and by airplane.

5.   Brownsville, Texas is a far more convenient location for this lawsuit than Austin, Texas for witnesses who reside in Monterrey, Mexico. The drive between Monterrey and Brownsville takes approximately 3 hours. If this lawsuit proceeds in Brownsville, witnesses located in Monterrey will realistically be able to drive to court, rather than fly, and will be able to drive to court and return home in the same day. Mexican citizens do not need a special permit from the United States Immigration and Naturalization Service ("INS") to travel to Brownsville.

6.   By contrast, the drive from Monterrey to Austin, Texas takes approximately 6 hours. Moreover, a Mexican citizen travelling by automobile to Austin must have a special permit from the INS and pay a fee for the permit. If the lawsuit proceeds in Austin, witnesses located in Monterrey will realistically be required to make roundtrip international airplane flights to and from court, and will have to make an overnight stay in Austin for each court appearance. There are no direct flights from Monterrey to Austin, and airplane travel from Monterrey to Austin generally requires at least 5 hours (door-to-door) given the connection schedules through Houston or Dallas. Roundtrip airfares from Monterrey to Austin are expensive, in the range of US$500-800.

7.   Further Affiant sayeth not.

UNITED MEXICAN STATES.
STATE OF NUEVO LEON
CITY OF MONTERREY
CONSULATE GENERAL OF THE    } ss
UNITED STATES OF AMERICA

_Cesar Eduardo Tace c.._
Cesar Eduardo Santacruz Polendo

SUBSCRIBED and SWORN to on this the ___5th___ day of April, 2002.

_Katherine M. McGowen_
Katherine M. McGowen
Vice Consul of the United States
of America



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

MARCA-TEL, S.A. DE C.V.,       §

        **Plaintiff,**       §

                      §

v.                        §      CIVIL ACTION NO. B-02-034

                      §

THOMAS K. GARNER; WESTEL, INC.;       §
and WESTEL INTERNATIONAL, INC.,       §

        **Defendants.**       §

## AFFIDAVIT OF TIMOTHY JAMES HEANEY

UNITED STATES OF MEXICO       §

                      §

STATE OF NUEVO LEON       §

        BEFORE ME, the undersigned authority, personally appeared Timothy James Heaney, and having been duly sworn, testified as follows:

1.     My name is Timothy James Heaney. I am over eighteen years of age, have never been convicted of a felony or crime involving moral turpitude and am in all other ways fully competent to make this affidavit. I am a citizen of the United States of America, and I reside and work in Monterrey, Nuevo Leon, Mexico. My address is Av. San Jeronimo 210 Pte., Col. San Jeronimo, 64640 Monterrey, Nuevo Leon, Mexico. I have personal knowledge of all the facts contained in this affidavit, and all the facts contained in this affidavit are true and correct.

2.     I am currently employed as the Chief Network Officer of Marca-Tel, S.A. de C.V., the Plaintiff in this case ("Marca-Tel"), a position I have held since December 1996. As such, I have been involved in, and have knowledge concerning, all the operations of Marcatel's fiber-optic network and associated equipment since that time. I also have been involved in, and have knowledge concerning, the fiber-optic pathway and associated equipment used for long-distance telephone traffic sent from Westel to Marca-Tel since the inception of their business relationship in 1997.

3.     In 1997, Westel began sending Marca-Tel "southbound" international long distance traffic, via two fiber-optic pathways known as the "Westel I trunk" and the "Westel II trunk." This "southbound" traffic consisted of international long distance telephone calls to Mexico handled by Westel that originated in the United States (or elsewhere in the world outside of Mexico), which Westel then sent to Marca-Tel for completion of the call in Mexico. Westel owns switching equipment in Austin, Texas. Marca-Tel owns

switching equipment in Monterrey, Mexico, a fiber-optic network located primarily in Mexico (but also in Texas, near McAllen), and transmission equipment in McAllen, Texas.

4.    All of the "southbound" international long-distance traffic sent from Westel to Marca-Tel over the Westel I and Westel II trunks (which I understand to be at issue in this case) passed through Westel's switch in Austin, then ran through a fiber-optic line owned by a third party running from Austin to McAllen, Texas, in roughly a straight-line path between the two cities.  In McAllen, all of this traffic passed through transmission equipment owned by Marca-Tel, and then passed through a fiber-optic line to Marca-Tel's switch in Monterrey, Mexico.  The fiber-optic pathway for this traffic between McAllen and Reynosa, Mexico was owned by the third party, and the fiber-optic pathway for this traffic between Reynosa, Mexico and Monterrey was owned by Marca-Tel.  Once the traffic reached Marca-Tel's switch in Monterrey, each call would be switched to its final destination for completion of the call.

5.    Further Affiant sayeth not.

UNITED MEXICAN STATES:
STATE OF NUEVO LEON
CITY OF MONTERREY          } SS
CONSULATE GENERAL OF THE
UNITED STATES OF AMERICA

_Timothy James Heaney_

Sworn to and subscribed
before me this 5th  day
of April, 2002.

_Katherine M. McGowen_
Vice Consul of the United States
of America

[Official Seal]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARCA-TEL, S.A. DE C.V., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-034 |
| | § | |
| THOMAS K. GARNER; WESTEL, INC.; | § | |
| and WESTEL INTERNATIONAL, INC., | § | |
| | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF MICHAEL C. SINGLEY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, personally appeared Michael C. Singley

and having been duly sworn, testified as follows:

1.  My name is Michael C. Singley.  I am over eighteen years of age, have never been convicted of a felony or crime involving moral turpitude and am in all other ways fully competent to make this affidavit.  I am a citizen of the United States of America, and I reside and work in Austin, Texas.  I am an attorney licensed to practice law in the State of Texas and in the United States District Court for the Southern District of Texas.  I am currently employed as an associate at the Austin office of Brobeck, Phleger, & Harrison, LLP, and I represent Plaintiff Marca-Tel, S.A. de C.V. in this case.  I have personal knowledge of all the facts contained in this affidavit, and all the facts contained in this affidavit are true and correct.

2.  Attached as Exhibit A is a true and correct copy of a printout I personally made on April 3, 2002, from the internet site www.southwest.com, the internet web site for Southwest Airlines.  Exhibit A shows that Southwest Airlines provides one daily nonstop flight from Austin, Texas to Harlingen, Texas with a duration of approximately one hour.  Exhibit A also shows that Southwest Airlines provides one daily nonstop flight from Harlingen, Texas to Austin, Texas with a duration of approximately one hour.

3.  Attached as Exhibit B is a true and correct copy of a printout I personally made on April 3, 2002, from the internet site www.expedia.com. Exhibit B gives driving directions, distance, and travel time by automobile from the Harlingen Airport in Harlingen, Texas to the United States District Court courthouse in Brownsville, Texas.  The distance for this trip is approximately 32 miles, and the driving time is approximately 39 minutes.

4.    Attached as Exhibit C is a true and correct copy of a printout I personally made on April 4, 2002, from the internet site www.westel.net, the Westel Defendants' internet web site. Exhibit C shows that Westel has three offices located within the Southern District of Texas: in McAllen, Corpus Christi, and Houston.

5.    Further Affiant sayeth not.

Michael C. Singley

SUBSCRIBED and SWORN to on this the __5th__ day of April, 2002.

CARIANNE N. GILLMORE
Notary Public
State of Texas
My Commission Expires
June 28, 2005

Carianne N. Gillmore
Notary Public in and for the State of Texas

 **RESERVATIONS    SCHEDULES    FARES    CLICK 'N SAVE®    TRAVEL CENTER    RAPID REWARDS**

# Southwest Airlines Schedule for Austin to Harlingen

| Flights | Departs | Arrives | Stops | Frequency | | | | | | |
|---------|---------|---------|-------|-----|-----|-----|-----|-----|-----|-----|
| | | | | Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| 620/1370 | 6:30am | 9:15am | HOU/1 | x | x | x | x | x | | |
| 1454/11 | 7:35am | 11:45am | HOU/1 | | | | | | | x |
| 2608/11 | 7:40am | 11:50am | HOU/1 | x | x | x | x | x | x | |
| 1564 | 11:35am | 12:35pm | N/S | | | | | | x | |
| 111 | 11:55am | 1:00pm | N/S | x | x | x | x | x | | |
| 111 | 12:10pm | 1:10pm | N/S | | | | | | | x |
| 2233/469 | 12:35pm | 3:35pm | HOU/1 | x | x | x | x | x | x | x |
| 907/41 | 3:55pm | 6:55pm | HOU/1 | x | x | x | x | x | x | |
| 907/41 | 4:10pm | 6:55pm | HOU/1 | | | | | | | x |
| 1592/47 | 5:15pm | 8:20pm | HOU/1 | x | x | x | x | x | x | |
| 1592/47 | 5:20pm | 8:15pm | HOU/1 | | | | | | | x |
| 196/1702 | 8:00pm | 10:55pm | HOU/1 | x | x | x | x | x | | x |

      

**southwest.com**    Home | Reservations | Schedules | Fares | Click 'n Save | Programs & Services | Rapid Rewards
E-Mail Updates | SWA Vacations | Careers | About SWA | Travel Center | Search
Terms & Conditions | Privacy Policy & Security

Southwest Airlines Schedule Display

http://www.southwest.com/cgi-bin/displaySchedule

 **RESERVATIONS    SCHEDULES    FARES    CLICK 'N SAVE®    TRAVEL CENTER    RAPID REWARDS**

# Southwest Airlines Schedule for Harlingen to Austin

| Flights | Departs | Arrives | Stops | Frequency | | | | | | |
|---------|---------|---------|-------|-----|-----|-----|-----|-----|-----|-----|
| | | | | Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| 1651/186 | 6:10am | 9:40am | HOU/1 | x | x | x | x | x | | |
| 92/2507 | 7:55am | 11:05am | HOU/1 | | | | | | x | |
| 20/636 | 9:35am | 12:35pm | HOU/1 | x | x | x | x | x | x | x |
| 192 | 12:55pm | 2:00pm | N/S | x | x | x | x | x | x | |
| 34/2086 | 1:20pm | 4:15pm | HOU/1 | x | x | x | x | x | | |
| 192 | 1:30pm | 2:35pm | N/S | | | | | | | x |
| 38/784 | 2:10pm | 5:05pm | HOU/1 | | | | | | | x |
| 38/784 | 2:15pm | 4:45pm | HOU/1 | x | x | x | x | x | x | |
| 46/1964 | 3:55pm | 7:20pm | HOU/1 | x | x | x | x | x | x | |

          

**southwest.com**    Home | Reservations | Schedules | Fares | Click 'n Save | Programs & Services | Rapid Rewards
E-Mail Updates | SWA Vacations | Careers | About SWA | Travel Center | Search
Terms & Conditions | Privacy Policy & Security

4/3/2002 5:26 PM



# Southwest Airlines Fares

The following is a general listing of fares offered for the Austin-Harlingen market.

- Fares are subject to flight availability on published, scheduled service.
- Some lower priced fares may be available.
- Limited seating, advance purchase, and other restrictions may apply.
- Fares do not include Passenger Facility Charges of up to $18 roundtrip. See the PFC section of the website for details.
- All fares are subject to change until tickets are purchased.
- Some fares may be available for a limited time only.
- Fares do not include a federal excise tax of up to $3.00 that will be imposed on each flight segment of your itinerary. A flight segment is defined as a take off and a landing.
- Fares listed are for general information only and are not a reflection of current seat availability.

### Austin to Harlingen

| Fare Type | Price | Round Trip |
|---|---|---|
| Refundable Fare | 99.00 | |
| Child Fare | 79.00 | |
| Youth Fare | 79.00 | |
| Infant Fare | 54.00 | |
| Roundtrip Mon-Fri 7PM-5:59AM,Sat & Sun | 158.00 | X |
| Roundtrip Mon-Fri 6AM-6:59PM | 182.00 | X |
| Advance Purchase Fare | 72.00 | |
| Senior Citizen Fare | 54.00 | |
| Discount Fare | 92.00 | X |
| Friends Fly Free | 118.00 | X |



 **southwest.com**    Home | Reservations | Schedules | Fares | Click 'n Save | Programs & Services | Rapid Rewards
E-Mail Updates | SWA Vacations | Careers | About SWA | Travel Center | Search
Terms & Conditions | Privacy Policy & Security




University of Phoenix ONLINE — Bachelors Degree Programs — The Nation's Leading Online University

Expedia.com® Welcome - Already a member? Sign in

home | flights | hotels | cars | vacation packages | cruises | deals | guides | maps | business

Site Map | My Trips | My Profile | Customer Support



Getting Started
Find a Map

**Get Driving Directions ▶**

My Maps & Routes

🛫 FLIGHTS
Departing from:
Nuevo Laredo
Going to:
Monterrey

🏨 HOTELS
in Brownsville
Choose a different city

🚗 CAR RENTALS
in Monterrey

📖 GUIDE
Travel Information

Build your own bag!
Click here

Get Matched to
PRE-SCREENED
Contractors!

QUESTIONS?
? Maps FAQs
? Need help with maps?

# Search Results

**From:** 3030 Rebel Dr, Harlingen, TX, 78550
**To:** E Harrison St, Brownsville, TX, 78520

Print this route    Save this route    E-mail this route



Small - 296x240

| Directions | Distance | Time |
|---|---|---|
| **Start:** Depart 3030 Rebel Dr, Harlingen, TX, 78550 on Rebel Dr [Hackberry Dr] (North) | < 0.1 | 0:01 |
| 1: Turn LEFT (West) onto **Cactus** | 0.2 | 0:01 |
| 2: Turn LEFT (West) onto **Iwo Jima Blvd** | 0.3 | 0:01 |
| 3: Turn LEFT (South) onto **25th St [N 25th St]** | 0.2 | 0:01 |
| 4: Turn RIGHT (North-West) onto **(N) Loop 499 [SR-499 Loop]** | 2.7 | 0:05 |
| 5: Bear LEFT (West) onto **(N) Loop 499 [Montezuma Ave]** | 0.3 | 0:01 |
| 6: Continue (West) on **Loop 499 [N Loop 499]** | 0.3 | 0:01 |
| 7: Bear LEFT (South-West) onto **Primera Rd** | 0.1 | 0:01 |
| 8: At US-77 Primera Rd Exit, turn LEFT (South) onto **US-77** | 28.1 | 0:28 |
| 9: At US-77 E 14th St Exit, turn RIGHT (South-West) onto **E 14th St** | 0.3 | 0:01 |
| **End:** Arrive E Harrison St, Brownsville, TX, 78520 | < 0.1 | < 1min |
| **Total Route** | **32.4 mi** | **39 mins** |

Westel Branch Offices-Westel, Inc.-Texas long distance communica...         http://www.westel.net/offic.htm





# BRANCH OFFICES

Products & Services

Customer Support

The World at Your Fingers

Feedback & Referrals

Sign Me Up

Back Home

## WORLD HEADQUARTERS

### AUSTIN
111 Congress Ave.#600
Austin, TX 78701
**P:** (512)480-5500
(800)580-5500
**F:** (512)480-5590

## TEXAS OFFICES

### MCALLEN
1109 Nolana Ave.#303
McAllen, TX 78504
**P:** (956)682-0251
(800)580-0251
**F:** (956)682-8415

### CORPUS CHRISTI
410 S Padre Island
Dr.#106
Corpus Christi, TX
78405
**P:** (512)289-1935
(800)580-6441
**F:** (512)289-1937

### SAN ANTONIO
10010 San Pedro #350
San Antonio, TX 78216
**P:** (210)349-5272
(800)580-8000
**F:** (210)349-5279

### DALLAS
12201 Merit Dr. #500
Dallas, TX 75251
**P:** (972)991-4795
(800)580-4795
**F:** (972)960-2512

### FORT WORTH
2315 N. Main #330
Fort Worth, TX 76106
**P:** (817)624-4145
(877)624-4145
**F:** (817)624-3981

### HOUSTON
1415 North Loop West
#910
Houston, TX 77008
**P:** (713)861-4657
(800)580-4680
**F:** (713)861-9351

## MIDWEST OFFICES

### KANSAS CITY
8826 Santa Fe Dr. #309
Overland Park, KS
66212
**P:** (913)385-9085
(800)580-5289
**F:** (913)385-0760

### OKLAHOMA CITY
3030 NW Expressway
#1202
Oklahoma City, OK
73112
**P:** (405)949-2428
(800)580-2428
**F:** (405)949-2532

### TULSA
5100 East Skelly Dr.
#520
Tulsa, OK 74135-6445
**P:** (913)622-7701
(800)580-2378
**F:** (913)622-8986

## WEST OFFICES

| PHOENIX | TUCSON | DENVER |
|---------|--------|--------|
| 2600 N. Central Ave. #1675 | 6377 E. Tanque Verde #230 | 1720 S. Bellaire #909 |
| Phoenix, AZ 85004 | Tucson, AZ 85715 | Denver,CO 80222 |
| **P:** (602)279-5000 | **P:** (520)290-9707 | **P:** (303)691-5878, 5269 |
| (800)580-9378 | (800)580-6545 | (800)580-5801 |
| **F:** (913)279-5005 | **F:** (520)290-9772 | **F:** (303)691-6005 |

**EL PASO**
5774 North Mesa
El Paso, TX 79912
**P:** (915)585-3458
(800)580-3458
**F:** (915)585-3498

Westel's Background | Westel Network | Branch Offices | Employee Benefits | Employment Opportunities | Employment Application

Back to the Top